# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

BENJY D. SMITH, )
)
      Plaintiff, )
)
vs. ) Case No. 17-CV-58-JHP-FHM
)
THE BURLINGTON )
INSURANCE COMPANY, )
)
      Defendant. )

## OPINION AND ORDER

Before the Court are Plaintiff's Motion for Summary Judgment (Dkt. 21) and Defendant's Motion for Summary Judgment (Dkt. 25). After consideration of the briefs, and for the reasons stated below, Defendant's Motion is **GRANTED** and Plaintiff's Motion is **DENIED**.

## BACKGROUND

This case centers on an insurance coverage dispute. The following material facts are undisputed. In 2013, Plaintiff Benjy D. Smith ("Smith") obtained commercial general liability insurance from Defendant Burlington Insurance Company ("Burlington"). (Dkt. 25, at 2 (Burlington's Statement of Undisputed Facts, No. 5)). The Burlington policy stated on its Declarations page that Smith's "Business Description" was a "courier service." (Dkt. 25-5 (Burlington Policy), at 3). The Declarations were expressly incorporated into the Burlington policy,

stating, "These declarations together with the common policy conditions and coverage form(s) and any endorsement(s), complete the above numbered policy." (*Id.*). The Burlington policy also included a "Representations" section, which stated, "By accepting this policy, you agree: (a) The statements in the Declarations are accurate and complete; (b) Those statements are based upon representations you made to us; and (c) We have issued this policy in reliance upon your representations." (*Id.* at 37). Smith's policy with Burlington renewed in May 2014, extending the policy period to May 2015. (*Id.* at 3). The Burlington policy remained in effect through May 29, 2015. (*Id.*).

Beginning in 2011, Smith operated a security service, Smith and Son Security, in addition to the courier service. (Dkt. 25, at 3, 5 (Burlington's Statement of Undisputed Facts, Nos. 12, 24)). The Burlington policy does not reference a security business or security services, Smith & Son Security, the employment of armed security guards, or the existence of any employees. (Dkt. 25-5 (Burlington Policy)). On February 4, 2015, an armed security guard hired by Smith to provide security services at a Tulsa apartment complex allegedly shot Monroe Bird III while on duty. (*See* Dkt. 21-2 (Petition in *Magness v. Stone et al.*, Tulsa County Case No. CJ-2015-02925)). Bird later died from his injuries. On August 6, 2015, Bird's estate brought a civil case in Tulsa County District Court against Smith d/b/a Smith and Son Security for negligent hiring, retention, and

supervision relating to the shooting incident. (Case No. CJ-2015-02925 (the "Magness Action")).

In this proceeding, Smith seeks a declaration that Burlington has a duty to defend and indemnify him in the Magness Action and must reimburse Smith's defense costs incurred defending himself in the Magness Action. Burlington has now filed a Motion for Summary Judgment. (Dkt. 25). Smith filed a Response in opposition (Dkt. 27), and Burlington filed a Reply (Dkt. 31). Smith also has filed a Motion for Summary Judgment with respect to Smith's claim for declaratory judgment. (Dkt. 21). Burlington filed a Response in opposition (Dkt. 23), and Smith filed a Reply (Dkt. 26). Both cross-motions are now fully briefed and ripe for review.

## DISCUSSION

The Court's task is to construe the Burlington policy, applying Oklahoma law.[1] Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of

---

[1] As this action was removed on the basis of diversity jurisdiction, state law applies. The parties agree that Oklahoma law governs the dispute.

the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. However, a party opposing a motion for summary judgment may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

I. **Burlington's Motion for Summary Judgment**

In its Motion for Summary Judgment, Burlington contends its policy did not cover damages for wrongful death caused by an armed employee of Smith's security business, and the policy expressly limited coverage to Smith's courier service business. Smith argues Burlington is required to provide coverage for the Magness Action, because the policy was in effect at the time of the shooting incident, and the policy does not specifically exclude coverage for incidents pertaining to his security business.

The Court must begin with the express terms of the policy. When the policy provisions are unambiguous and clear, the policy language is given its ordinary, plain meaning, and the policy contract is enforced so as to carry out the parties'

4

intentions. *BP America, Inc. v. State Auto Property & Casualty Ins. Co.*, 148 P.3d 832, 835 (Okla. 2005), *as corrected* (Oct. 30, 2006). The Court "may not rewrite an insurance contract to benefit either party." *Id.* (citations omitted). Moreover, the Court cannot "impose coverage where the policy language clearly does not intend that a particular . . . risk should be covered." *Id.* at 835-36 (citing *American Economy Ins. Co. v. Bogdahn,* 89 P.3d 1051, 1054 (Okla. 2004)).

Here, the Burlington policy Declarations state that Smith is the insured for his individual business, which is described as a "courier service." (Dkt. 25-5 (Burlington Policy), at 3). Burlington contends it would be unreasonable to construe a "courier service" to include armed-security operations. The Court agrees. The plain, ordinary meaning of a "courier" is a "messenger." Merriam-Webster Online Dictionary, *at* http://www.merriam-webster.com/dictionary/couriers (last visited Mar. 15, 2018). It follows that the plain, ordinary meaning of a "courier service" would be a business that transports goods or documents. As Burlington points out, the policy does not refer to Smith and Son, any security business, armed security operations, or employment of security guards. It would be a strained and unreasonable reading of "courier service" to include armed-security services.

In the policy, Smith agreed that "[t]he statements in the Declarations are accurate and complete"; that "[t]hose statements are based upon representations"

Smith made to Burlington; and that Burlington "issued this policy in reliance upon [those] representations." (Dkt. 25-5, at 37). Based on this agreement, Burlington argues Smith represented and agreed that his business was a "courier service" and no armed security service was mentioned and therefore not covered.

The Court agrees that the plain, unambiguous language of the Burlington policy indicates that no armed security service was covered by the policy. It is plain that the policy covered only Smith's courier service, because the Business Description in the policy described only a "courier service." There is no possible reading of the "courier service" description that would cover an armed security guard business, and Smith agreed by accepting the policy that this description was "accurate and complete." These terms are unambiguous and reasonably susceptible to only one interpretation that disfavors an expansion of coverage to an armed security guard business. *See Max True Plastering Co. v. U.S. Fidelity and Guar. Co.*, 912 P.2d 861, 869 (Okla. 1996) (A policy term will be considered ambiguous only if it is reasonably susceptible to more than one interpretation, and the court will "not indulge in forced or constrained interpretations to create and then to construe ambiguities in insurance contracts.") (citations omitted).[2]

---

[2] Because the Court finds the relevant Burlington policy language to be unambiguous, the Court will not consider the other exhibits Burlington submits in support of its position: Dkt. 25-1 to Dkt. 25-4, Dkt. 25-6 to Dkt. 25-10. Because these exhibits are unnecessary to the Court's conclusion, the Court will not rule on Smith's arguments regarding the admissibility of these exhibits. Further, the Court denies Smith's request to strike Burlington's Motion for Summary Judgment based on the inadmissibility of these exhibits.

Further, as Burlington points out, the policy has a classification code of "94099 – Express Companies," instead of the code used for security companies. (Dkt. 25-5 (Burlington Policy), at 14). The use of the rate classification code for "Express Companies" rather than a code that could conceivably cover an armed security guard business confirms that there was no intent to cover Smith's security business. Accordingly, Smith's claim for coverage pertaining to his security business must fail.

In his Response, Smith does not dispute that the policy language describes only a courier business. Nor does he point to any part of the policy that would suggest an intent to cover Smith's armed security guard business. Instead, Smith argues that coverage for his security business is required, because the policy does not explicitly *exclude* such a business. First, Smith asserts the use of the premium classification code for "Express Companies" in the policy has no effect on the scope of coverage afforded under the policy, because the policy lacks a "premium classification limitation" endorsement to the policy. In the absence of such an express limitation, Smith contends no such limitation exists.

In support of this contention, Smith relies on an Oklahoma Court of Civil Appeals case, *Roads West, Inc. v. Austin*, 91 P.3d 81 (Okla. Ct. Civ. App. 2003). In *Roads West*, an Oklahoma employee was injured during the course of employment. The workers' compensation policy referenced an extension schedule

for calculation of premium, which stated "Location 001 – Illinois Clerical." *Id.* at 88. The same section included the caveat, "Entries in this item, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy." *Id.* Elsewhere, the policy stated, "This policy . . . covers all other workplaces in item 3.A. states unless you have other insurance or are self-insured for such workplaces." *Id.* at 87. Item 3.A. provided, "Part One of the policy applies to the Workers Compensation Law of the states listed here: All states or as approved by law." *Id.* The policy defined "state" as any state of the United States and the District of Columbia. *Id.*

The insurer argued the classification code limited coverage to only Illinois Clerical workers, and the trial court agreed. The Court of Civil Appeals reversed, concluding:

> The insurance contract . . . did not provide that the work classifications defined the covered risk. To the contrary, the extension schedule itself provided the entries in the classification of operations table did not modify any of the other provisions of the policy. The policy stated the covered risk was "the benefits required of you by the workers compensation law." It expressly recognized the classifications were subject to audit and revision based on [the insured's] "actual exposures." Accordingly, we conclude the policy did not limit its coverage to Illinois clerical workers, but covered all of [the insured's] enrolled employees, including Claimant.

*Id.* at 88. The Court of Civil Appeals cited several cases from other states in reaching its conclusion, but no Oklahoma law.

8

This Court reads *Roads West* to be distinguishable from this case, because the insurance policy at issue in *Roads West* clearly provided that all states were covered by the policy, and the policy stated the classification code, which stated "Illinois Clerical," did not modify the other provisions of the policy. Here, by contrast, the Burlington policy not only includes a classification code for "Express Services" without the limiting language included in the *Roads West* policy, but also includes a "Business Description" of "courier service," on the Declarations page of the policy. There is no conflicting or limiting language in the Burlington policy to suggest a broader scope of coverage was intended beyond Smith's courier service. Therefore, *Roads West* is not persuasive in Smith's favor.

Smith further argues that the "Business Description" on the policy Declarations page does not limit coverage because it is not a part of the policy language itself. However, Smith's argument ignores the plain language on the Declarations page itself, which states, "These declarations together with the common policy conditions and coverage form(s) and any endorsement(s), complete the above numbered policy." (Dkt. 25-5 (Burlington Policy), at 3). Smith's argument also ignores the "Representations" section of the policy, which states, "By accepting this policy, you agree: (a) The statements in the Declarations are accurate and complete; (b) Those statements are based upon representations you made to us; and (c) We have issued this policy in reliance upon your

9

representations." (*Id.* at 37). Accordingly, it is clear from the policy language that the "courier service" description was based on Smith's representation regarding the nature of his business, and Smith agreed that the description was "accurate and complete." Smith's failure to address this plain "Representations" language undermines his argument that the Business Description has no bearing on the intended scope of coverage.

Though Smith offers a litany of favorable quotations pulled from cases spanning the nation, Smith does not cite to a single case in which coverage was required in a circumstance similar to the one here—*i.e.*, in which the insured sought coverage for a business operation that was completely separate and different in nature than the business described in the policy. By contrast, Burlington points to a Seventh Circuit decision—*Westfield Insurance Co. v. Vandenberg*, 796 F.3d 773, 778-79 (7th Cir. 2015)—in which the court held a business description and general liability schedule, combined with statements in the insurance application, sufficed to explicitly establish the parties' intent to limit coverage.

In *Westfield*, the insurance agreement's declarations page listed the insured's business as "concrete construction." *Id.* at 778. Further, the general liability schedule explained coverage was being provided for work done "in connection with construction, reconstruction, repair or erection of buildings." *Id.* Based on

10

these representations, the court concluded only the construction-related business was covered by the policy, and therefore no coverage was available for the insured's side business chartering yachts. Further, statements made in the insurance application that it was engaged in the construction business reinforced the court's conclusion that the parties did not intend to cover an accident occurring on a yacht. *Id.* at 779. The *Westfield* court rejected the insured's contention that the policy provided coverage for any and all liabilities unless they were explicitly excluded. The court found the "text and structure of the policies makes clear that the parties intended to insure against the risks of operating a construction company." *Id.* "A policy does not need to exclude from coverage liability that was not contemplated by the parties and not intended to be covered under their agreement." *Id.* "To hold otherwise would require the parties to conjure up and exclude explicitly any and all activities in which [the insured] might engage. Such a speculative exercise in hypotheticals would be nonsensical." *Id.* at 780.[3] The

---

[3] Smith attempts to distinguish *Westfield* on two grounds. First, he asserts that, under Oklahoma law, a classification code cannot limit coverage absent a classification endorsement. The Court fails to appreciate the relevance of this argument to *Westfield*, which did not address a classification code or endorsement. Second, Smith argues *Westfield* is of limited value, because the court did not find the policy ambiguous but nevertheless relied on incorporated representations in the insurance application in reaching its conclusion. Because his application was not incorporated into the Burlington policy, Smith asserts the Court here is obliged to ignore the application in reaching its conclusion, unlike *Westfield*. Without determining whether Smith's insurance application is admissible, the Court finds Smith's argument to form an insufficient ground for disregarding *Westfield* as persuasive authority.

Court finds the *Westfield* court's reasoning and conclusion to be persuasive authority in Burlington's favor.

Burlington also cites *Gemini Insurance Co. v. S & J Diving, Inc.*, 464 F. Supp. 2d 641 (S.D. Tex. 2006), in support of its position. In *Gemini*, the declarations page on the subject policy described the insured's business as "diving contractor/inspections/sunvoy [sic] & repair docks & vessels." *Id.* at 649. Further, the insured's business was classified, for purposes of the premium charged, as "Diving—Marine; Inspections and Appraisal Companies—Inspecting for Insurance or Valuation Purposes; Ship Repair or Conversion; and Carpentry NOC." *Id.* The insured sought coverage under the policy after it was sued for damages arising from an abduction and assault at a motorcycle rally organized by the insured's event production company. *Id.* at 644-45. The insured maintained coverage was required, because there was no express exclusion in the policy from coverage for conduct occurring at the motorcycle rally. *Id.* at 649. The court looked to the policy declarations, business description, and premium classification to determine whether coverage was available. *Id.* at 649-50. The court found the policy covered activities related only to marine survey operations, finding it would be unreasonable to conclude the policy covered "any and all activity, not specifically excluded, when the insured negotiated as, and described itself to be, a

marine operation." *Id.* at 650.[4] The Court finds the *Gemini* court's reasoning and conclusion also to be persuasive authority in Burlington's favor.

As in *Westfield* and *Gemini*, Smith seeks coverage for a business that is fundamentally different from the one described in the policy and his application. Smith represented he was engaged in courier services, as shown on the policy's Declarations page. The business description and the premium classification code in the Burlington policy show the parties' intent to insure only Smith's courier business and not a separate armed-security business. Therefore, the Burlington policy does not cover the shooting death of Monroe Bird, which arose from Smith's security business.

Perhaps tellingly, Plaintiff never disputes the substance of Burlington's argument that the parties' intent was to insure only Smith's courier business. Instead, Smith relies on arguments that the Court should ignore the policy's plain language, as well as procedural arguments pertaining to the admissibility of Burlington's extrinsic evidence. Because the Court finds the Burlington policy is

---

[4] Smith attempts to distinguish *Gemini* on the ground that the Gemini declarations page explicitly integrated the declarations into the policy, whereas the Burlington policy does not. However, the Burlington Declarations page includes virtually identical integration language to that presented in *Gemini*. *Compare* Dkt. 25-5 (Burlington Policy), at 3 ("These declarations together with the common policy conditions and coverage form(s) and any endorsements(s), complete the above numbered policy.") *and Gemini*, 464 F. Supp. 2d at 649 n.4 ("The Common Policy Declarations page states as follows: These common policy declarations, and if applicable, the commercial property coverage, the commercial general liability declarations together with the common policy conditions, coverage part(s), form(s) and endorsements, if any, issued to form a part thereof, complete the above numbered policy.").

unambiguous as to the business covered, the Court need not consider Burlington's extrinsic evidence to conclude that the policy clearly does not cover Smith's armed-security business. The policy language itself unambiguously covers only Smith's courier services business. The Court cannot ignore this clear intent expressed in the policy by adopting a strained interpretation that the "courier service" policy covers any business Smith might choose to pursue. Smith cites no authority to support such an inequitable result. Smith raises no genuine issue of material fact regarding coverage for the shooting incident or Burlington's duty to defend or indemnify Smith in the Magness Action. Accordingly, summary judgment in Burlington's favor is appropriately granted.

## II. Smith's Motion for Summary Judgment

For the reasons explained above, the Court finds Burlington is entitled to summary judgment in its favor. In his cross-Motion for Summary Judgment, Smith argues the Magness Action alleges a covered loss, which means Burlington is obligated to defend and indemnify him for the Magness Action. (Dkt. 21). As explained above in Part I, the Burlington policy did not cover losses pertaining to Smith's security business. Smith's arguments for summary judgment in his favor, with the below exception, are addressed above in Part I and denied.

In his Motion for Summary Judgment, Smith contends that the "Who is an Insured" provision in the Burlington policy confirms that the policy covers his security business. The relevant section reads:

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

    **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

(Dkt. 25-5 (Burlington Policy), at 34). Smith reads this provision to cover *any* business of which he is the sole owner, including his security business. Smith reads too much into this provision. As Burlington points out in its Response, this provision plainly indicates Smith is an insured, but only with respect to the conduct of a business, as opposed to conduct in his personal life. This provision does not vitiate or otherwise broaden the "courier service" description of Smith's business on the Declarations page. Smith's argument is not compelling.

Accordingly, the Court denies Smith's request for summary judgment in his favor.

## CONCLUSION

For the reasons detailed above, Burlington's Motion for Summary Judgment (Dkt. 25) is **GRANTED**. Smith's Motion for Summary Judgment (Dkt. 21) is **DENIED**.

James H. Payne
United States District Judge
Northern District of Oklahoma